**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HARBOURTOWN RETAIL, LLC; HARBOURTOWN DEVELOPMENT, LLC; DO YOUR JOB, INC.; 158 WATER STREET, LLC; 2020 DEVELOPMENT, LLC; and MASS. REAL ESTATE SERVICES, INC., Plaintiffs, <br><br> v. <br><br> DANIEL THERRIEN, Defendant. | No. 25-cv-13217-DLC |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION**
**TO DISMISS THE AMENDED COMPLAINT**

**CABELL, U.S.M.J.**

I.   **INTRODUCTION**

Plaintiffs all maintain bank accounts at Rockland Trust Bank (the Accounts).  Defendant Daniel Therrien, who lacked authority to access the Accounts, nevertheless managed to infiltrate each account and then download and export confidential financial information.  Therrien then used the information, or so plaintiffs contend, to buttress his position in state court lawsuits against Michael Vogel.  Vogel, in turn, is affiliated with each plaintiff as a manager, officer, or shareholder.  As a result, plaintiffs filed this action alleging that Therrien violated the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030.

Presently pending is Therrien's motion to dismiss the amended complaint, primarily on the ground that plaintiffs fail to plausibly show a recoverable "loss" of at least $5,000 or "damage" within the meaning of the CFAA.  (D. 19).  Therrien also argues that:  (1) the alleged damages plaintiffs seek are speculative and conclusory; and (2) the facts in the original complaint, that Vogel granted Therrien access to the Accounts, should control because of a contradiction regarding such access between the original complaint and the amended complaint.  As explained below, the amended complaint adequately pleads a "loss" with costs of at least $5,000.  Therrien's remaining two arguments above also fail to persuade.  Accordingly, the court will deny the motion.

## II.   <u>LEGAL STANDARD</u>

To withstand a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face" even if actual proof of the facts is improbable.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Miller v. Town of Wenham*, 833 F.3d 46, 51 (1st Cir. 2016).  The "standard is not akin to a probability requirement," but it" requires "more than a sheer possibility that a defendant has acted unlawfully."  *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (citations and internal quotation marks omitted).  In order for a party to "survive a motion to dismiss, a complaint must include 'enough facts to state a claim to relief that is plausible on its

face.'"  *In re Ariad Pharms. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016) (quoting *Twombly*, 550 U.S. at 570).    Reasonable inferences from the facts alleged in the complaint are drawn in the plaintiff's favor.  *Deangelis v. Hasbro, Inc.*, 165 F.4th 646, 649 (1st Cir. 2026) (citation omitted).  Hewing to this standard, the facts in the amended complaint are as follows.

### III.   FACTUAL BACKGROUND

As indicated, plaintiffs maintain the Accounts at Rockland Trust Bank (Rockland).    (D. 15, ¶¶ 11-12).    Rockland requires usernames and passwords to access the Accounts on its computers. (D. 15, ¶¶ 13, 65).    Importantly, Therrien is not authorized to access or view the Accounts.  (D. 15, ¶ 18).    In contrast, Vogel has full access to the Accounts.  (D. 15, ¶¶ 26-27, 29).  Therrien and Vogel are also partners in various business entities.  (D. 15, p. 2).

One such entity is Harbourtown Penthouse Suites, LLC (Penthouse).    (D. 15, ¶ 14).    Vogel created and managed Penthouse and Therrien was also a manager of Penthouse.    (D. 15, ¶ 14). Penthouse has a bank account at Rockland.    (D. 15, ¶ 14).

In December 2024, Therrien used his right to view Penthouse's account to gain access to the Accounts.  (D. 15, ¶ 15).  Therrien then downloaded and exported confidential financial information from the Accounts.  (D. 15, ¶ 22).  He also corrupted each account

3

and the data related to each account and changed the names on the Accounts.  (D. 15, ¶¶ 17, 23, 53, 56).

On July 1, plaintiffs found out about the access.  As a result, they took steps to respond to the unauthorized access, including conducting a damage assessment and investigation.  (D. 15, ¶ 24).  At the same time, Vogel worked with Rockland and successfully terminated Therrien's access.

Undeterred, Therrien persuaded Rockland to restore his access later in the day on July 1.  He then used his access to terminate Vogel's access to the Accounts.  The next day, plaintiffs had Therrien again removed from accessing the Accounts.  (D. 15, ¶ 31).  To do so, plaintiffs had to freeze the Accounts and open new accounts at Rockland.  (D. 15, ¶ 31).  Vogel regained partial access to the Accounts on July 14 and full access on July 28.  (D. 15, ¶ 33).

Throughout July, Vogel met with bank officials to determine the extent of the intrusion and damage.  (D. 15, ¶ 35).  As part of the investigation and damage assessment, Rockland produced an Audit Report.  (D. 15, ¶ 37) (D. 15, Ex. 1-8).[1]  The report details Therrien's access across all the Accounts.  The access was extensive.  From December 1, 2024 to June 27, 2025, Therrien accessed the Accounts approximately 5,700 times.  What is more, he

---

[1] Printed, the Audit Report is slightly less than 3,000 pages.  Plaintiffs therefore provided a USB drive of the Audit Report for review.

exported confidential financial records and/or transaction data approximately 775 times.  Moreover, Therrien used the knowledge gained from his access to buttress his position in his ongoing state court lawsuits against Vogel and a number of plaintiffs. (D. 15, ¶ 54).

Of note regarding a loss of at least $5,000, plaintiffs expended money to pay Tara Calabrese, a manager of plaintiff Harbourtown Retail, LLC, for her time reviewing the Audit Report. Specifically, Calabrese spent more than sixty hours reviewing the Audit Report in order for plaintiffs to determine the extent of the damage Therrien caused.  (D. 15, ¶ 36).  Concurrently, Calabrese worked on plaintiffs' behalf to facilitate plaintiffs' response to the unauthorized intrusion.  (D. 15, ¶ 36).  In the same vein, other managers of plaintiffs spent more than one hundred hours responding to the intrusion and conducting a damage assessment.  (D. 15, ¶ 55).  For his part, Vogel spent more than fifty hours meeting with Rockland officials to respond to and determine the extent of Therrien's intrusion.  (D. 15, ¶ 35).  More, Vogel's time responding to the intrusion caused him to remain away from his other work for plaintiffs.  (D. 15, ¶ 55).[2]  In

---

[2] Paragraph 55 cited above does not explicitly refer to Vogel remaining away from his daily responsibilities working *for plaintiffs*. (D. 15, ¶ 55) (stating, "Vogel's own time to respond to the intrusion forced him to remain away from his day to day responsibilities.").  Drawing a reasonable inference in plaintiffs' favor, however, the reference to Vogel's "day to day responsibilities" refers to his work for plaintiffs.

total, the cost of the foregoing time to assess the damage, respond to the intrusion, work with the bank to restore access, and repair the compromised data was well in excess of $5,000.  (D. 15, ¶ 55).

## IV.  DISCUSSION

As noted, Therrien argues that plaintiffs fail to plead a "damage" or "loss" within the meaning of the CFAA.  He argues further that the alleged damages are speculative and conclusory.  Lastly, Therrien seeks dismissal because the verified amended complaint sets out facts that contradict the facts in the verified original complaint.  The court addresses these arguments seriatim.

## A.  DAMAGE OR LOSS

The CFAA is a criminal statute that in broad terms "bars unauthorized access to computers."  *Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195, 1199 (10th Cir. 2026) (citing 18 U.S.C. § 1030(a)).  It provides a private right of action in 18 U.S.C. § 1030(g).  *Welter v. Med. Pro. Mut. Ins. Co.*, Civil Action No. 22-cv-11047-PBS, 2023 WL 2988627, at *6 (D. Mass. Feb. 23, 2023).  Further, the private right of action extends to "[a]ny person[3] who suffers damage or loss" for a violation of the CFAA "if the conduct involves" factors in subclause "(I), (II), (IV), or (V) of subsection (c)(4)(A)(i)."  18 U.S.C. § 1030(g).  Subclause (I) is the only applicable subclause.[4]  It allows recovery for "*loss* to

---

[3] The term "person" includes a "firm, corporation . . . or legal or other entity."  18 U.S.C. 1030(e)(12) (defining "person").

6

1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I) (emphasis added). Damages are limited to economic damages. 18 U.S.C. § 1030(g) ("Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages.").

Importantly, section 1030(g) refers to "damage *or* loss." 18 U.S.C. § 1030(g) (emphasis added). Phrased in the disjunctive, the section thus allows recovery for either damage or loss. *See Campos-Chaves v. Garland*, 602 U.S. 447, 457 (2024) (interpreting "or" used in statute and stating "the word or is almost always disjunctive, and is generally used to indicate an alternative . . . .") (citations, internal quotation marks, and ellipses omitted); *accord Rojas-Tapia v. United States*, 130 F.4th 241, 252 (1st Cir. 2025) ("[A]lternatives listed in the statute at issue here are each separated by the disjunctive 'or,' . . ., which supports the notion that each alternative stands on its own . . . ."); *see also Corbin v. Salkovitz*, Civil Action No. 1:23-cv-12807-IT, 2024 WL 4652481, at *10 (D. Mass. Nov. 1, 2024) (Because 28 U.S.C. "§ 1412 is 'written in the disjunctive, making transfer of venue appropriate either in the interest of justice *or* for the convenience of the parties, this statutory provision creates two distinct analytical bases upon which transfer of venue may be

---

[4] The other subclauses pertain to medical treatment, a physical injury, a threat to public safety, or damage affecting a computer used by the United States government. 18 U.S.C. § 1030(c)(4)(A)(i)(II)-(IV).

grounded.") (citation and ellipses omitted) (emphasis added). Consequently, because the amended complaint sufficiently pleads "loss," as discussed below, it is not necessary to address whether the amended complaint adequately pleads "damage."

To continue, the CFAA defines "loss" as:

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other *consequential damages* incurred because of interruption of service[.]

18 U.S.C. § 1030(e)(11) (emphasis added). The broad language defining "loss" encompasses an assortment of conduct as compensable costs. "For example, if the alleged loss seeks to identify evidence of a breach of computer security, assess any damage it may have caused, and determine whether any remedial measures were needed to resecure the network, then it qualifies as a 'loss' pursuant to the CFAA." *Zap Cellular, Inc. v. Weintraub*, 15-CV-6723(PKC)(VMS), 2022 WL 4325746, at *12 (E.D.N.Y. Sept. 19, 2022) (citations omitted); *see Dreni v. PrinterOn Am. Corp.*, 486 F. Supp. 3d 712, 735 (S.D.N.Y. 2020) ("Courts have recognized that 'the costs of investigating security breaches constitute recoverable "losses," . . . .'"). Similarly, "consequential damages" within the meaning of section 1030(e)(11) comprise "costs incurred *as part of the response to a CFAA violation, including the investigation of an offense*." *A.V. ex rel. Vanderhye v.*

8

*iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009) (emphasis added); *see Moxie Pest Control*, 164 F.4th at 1201 (adhering to *Vanderhye*, 562 F.3d at 646, and citing decisions by the Sixth and Eleventh Circuits doing the same); *accord Philips Med. Sys. P.R. Inc. v. GIS Partners Corp.*, 203 F. Supp. 3d 221, 237 (D.P.R. 2016) ("'[T]he meaning of "loss," . . . has consistently meant a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted.'").

Here, Calabrese's work reviewing the Audit Report to respond to the unauthorized access falls within this language. Likewise, her time spent to review the Audit Report to assess the extent of the damage constitutes a compensable "loss." In like fashion, the cost of the time spent by plaintiffs' other managers responding to the unauthorized access and conducting damage assessments is a recoverable "loss."

Correspondingly, Vogel's work responding to the unauthorized access and determining the extent of the intrusion is compensable. Moreover, this work took time away from Vogel's other work-related responsibilities for plaintiffs. *See Vanderhye*, 562 F.3d at 646 ("[T]he cost of investigating and identifying the CFAA offense, including 'many hours of valuable time away from day-to-day responsibilities, causing losses well in excess of $5,000,' qualified as 'cost[s] of responding to an offense' under § 1030(e)(11)" (citing *SuccessFactors, Inc. v. Softscape, Inc.*, 544

F. Supp. 2d 975, 980-81 (N.D. Cal. 2008)); *Bowen v. Porsche Cars, N.A., Inc.*, 561 F. Supp. 3d 1362, 1371 (N.D. Ga. 2021) (hours spent by vehicle owner to address damage to vehicle's infotainment system caused by software update constituted compensable loss).[5]

As stated in the amended complaint, the cost of all this time exceeds $5,000.  *See Tumey L.L.P. v. Mycroft AI Inc.*, Case No. 4:21-00113-CV-RK, 2021 WL 4806734, at *9 (W.D. Mo. Oct. 14, 2021) (complaint's allegation that defendants' conduct in violation of CFAA "included 'damages and a loss of no less than $5,000" deemed sufficient to avoid Rule 12(b)(6) dismissal);[6] *Chubb Ina Holdings Inc. v. Chang*, Civil Action No. 16-2354-BRM-DEA, 2017 WL 499682, at *8 (D.N.J. Feb. 7, 2017) (complaint alleging "Plaintiffs have had to expend more than $5,000 to respond to the breach, including conducting a damage assessment[,]" considered adequate to survive Rule 12(b)(6) dismissal of CFAA claim).  Per the foregoing, the

---

[5] Whereas *Bowen* was a putative class action case, the finding above involves the court's assessment of Bowen's individual CFAA claim.

[6] Just as the amended complaint adds allegations describing the work by Calabrese, Vogel, and plaintiff's managers that supports the $5,000 aggregate amount, the complaint in *Tumey* added the following:

> Defendants' conduct, whether alone or in concert, caused Plaintiffs to incur damages in the form of actual financial loss through lost employee time spent addressing and responding to hacking attacks, hiring a computer specialist to defend against such attacks, costs associated with increased security (both physical and virtual) at Plaintiffs' offices and home, and the inability to access Plaintiffs' property (firm phone lines and email accounts) for the significant periods of time when functionality was entirely shut down due to the volume of cyberattacks.

*Id.*

amended complaint therefore sets out factual allegations sufficient to state a plausible "loss" totaling at least $5,000.

Therrien's attempt to reject these costs fails to persuade. In that regard, he asserts that personal time spent to investigate a claim is not compensable. His characterization of the work by Calabrese, Vogel, and plaintiffs' other managers as personal time is inaccurate. Drawing reasonable inferences, Calabrese was paid for her work. Further, Vogel along with plaintiffs' other managers took time away from their usual work for plaintiffs to respond to the intrusion on plaintiffs' behalf.[7]

Therrien also contends that attorneys' fees and reputational damage are not compensable losses. This is true. *See Welter*, 2023 WL 2988627, at *10 ("Attorneys' fees . . . are outside the zone of cognizable 'loss' under the CFAA" as is emotional distress.). The amended complaint, however, does not request attorneys' fees or emotional distress damages.

---

[7] The pertinent portion of the amended complaint states:

> In addition to the money *already paid* to Ms. Calabrese, Vogel's own time to respond to the intrusion forced him *to remain away from his day to day responsibilities*. All told, multiple managers for the Plaintiffs spent in excess of 100 hours *responding to this intrusion and conducting the necessary damage assessment*. The cost of this time to conduct the damage assessment, work with the bank to restore access and altered data and lost time from having been blocked from online use, is well in excess of $5,000.

(D. 15, ¶ 55) (emphasis added).

11

Lastly, the cases Therrien deems relevant (*Van Buren v. United States*, 593 U.S. 374, 391-392 (2021); *Padmanabhan v. Healey*, 159 F. Supp. 3d 220, 224 (D. Mass. 2016); *Welter*, 2023 WL 2988627, at *6; and *Pearl Inv., LLC v. Standard I/O, Inc.*, 257 F. Supp. 2d 326, 349 (D. Me. 2003)) are distinguishable.  Addressing these cases in sequence, *Van Buren* involved a criminal prosecution of a police officer who "ran a license-plate search in a law enforcement computer in exchange for money."[8]  *Van Buren*, 593 U.S. at 378.  The police officer was authorized to access the computer "for law enforcement purposes" and he could use the computer to retrieve license-plate information.  *Id*. at 396.

Therrien quotes the following language in *Van Buren* as limiting "loss" to technological harms.  (D. 20, pp. 13, 15) (Therrien's brief quoting the language and stating amended complaint "is devoid of any factual allegations that Therrien's access to [Rockland's] online banking platform caused any 'technological harms' that caused a cognizable 'loss' to the Plaintiffs[.]").

> The Government's position has another structural problem. Recall that violating § 1030(a)(2), the provision under which Van Buren was charged, also gives rise to civil liability. See § 1030(g).  Provisions defining "damage" and "loss" specify what a plaintiff in a civil suit can recover. "'[D]amage,'" the statute provides, means "any impairment to the integrity or availability of data, a program, a system, or information."  § 1030(e)(8).  The term "loss" likewise

---

[8] Although *Van Buren* was a criminal prosecution as opposed to a civil proceeding, the CFAA has only one definition of "loss" and it applies to both a prosecution and a civil proceeding.

> *relates to costs caused by harm to computer data*, programs, systems, or information services.  § 1030(e)(11).  *The statutory definitions of "damage" and "loss" thus focus on technological harms*—such as the *corruption of files*—of the type unauthorized users cause to computer systems and data. Limiting "damage" and "loss" in this way makes sense in a scheme "aimed at preventing the typical consequences of hacking."  *Royal Truck*, 974 F.3d at 760.  The term's definitions are ill fitted, however, to remediating "misuse" of sensitive information that employees may permissibly access using their computers.  *Ibid.*  Van Buren's situation is illustrative:  His run of the license plate did not impair the "integrity or availability" of data, nor did it otherwise harm the database system itself.

*Van Buren*, 593 U.S. at 391-392 (emphasis added).

First, Therrien overstates the Court's treatment of technological harms.  Specifically, the Court did not limit a compensable "loss" to technological harms.  Rather, the Court acknowledged a "*focus* on technological harms."  *Id*. at 392 (emphasis added).  Second, the example of technological harms, "corruption of files," includes the costs sought by plaintiffs. For instance, the costs plaintiffs incurred encompass the time spent working with Rockland to restore the altered data related to Therrien corrupting the Accounts and the data related to the Accounts.  (D. 15, ¶¶ 17, 55).  Accordingly, aspects of *Van Buren* support the existence of costs totaling at least $5,000.  In any event, the language is dicta.  *See Moxie Pest Control*, 164 F.4th at 1200 (explaining why the above-quoted language in *Van Buren* is dicta and adding that the Court did not "say, in dicta or otherwise, that the damages available when an individual does

violate the CFAA are limited to technological harms") (emphasis omitted).

Next, Therrien cites *Padmanabhan*.  In *Padmanabhan*, a doctor alleged that state officials in the Office of the Attorney General of the Commonwealth of Massachusetts and state investigators in the Massachusetts Department of Public Health unlawfully accessed the doctor's computer database that monitored his patients' prescriptions.  *Padmanabhan*, 159 F. Supp. 3d at 222.  Among other matters, the court addressed defendants' argument that the doctor did not suffer a "loss" under the CFAA.  *Id*. at 223-224.

Therrien raises two points anent *Padmanabhan*.  First, he asserts that the plaintiffs in that case, like plaintiffs in this case, sought compensation for personal time investigating the CFAA violation.  (D. 20, p. 14).  Again, Therrien's depiction of the work by Calabrese, Vogel, and plaintiffs' other managers as personal time is incorrect.

Second, Therrien, after correctly noting that the court allowed a motion to dismiss, quotes the language that "nothing in the [CFAA] suggests that the alleged loss or costs can be for matters unrelated to the computer."  (D. 20, p. 14) (quoting *Padmanabhan*, 159 F. Supp. 3d at 224).  Drawing reasonable inferences, Therrien accessed the Accounts in Rockland computer network.  (D. 15, ¶¶ 15, 65).  Moreover, the court in *Padmanabhan* listed what the doctor did *not* claim, namely, that defendants'

14

actions "required [the doctor] to engage in computer investigation or repair . . . ." *Id.* The implication is that expending hours to perform computer investigation or repair is a compensable loss. Here, the alleged loss includes time spent investigating the extent of the damage and the unauthorized intrusion by Therrien in the Accounts. (D. 15, ¶¶ 18, 24, 34-35, 55). Thus, contrary to Therrien's implicit assertion, *Padmanabhan* does not impactfully bolster Therrien's position of no cognizable loss of at least $5,000.

Proceeding, Therrien cites *Welter* as holding that the CFAA "has never been read to extend to losses or costs that are unrelated to the computer or computer service that has been attacked." (D. 20, p. 15) (quoting *Welter*, 2023 WL 2988627, at *10). This was not the holding in *Welter*. Rather, this quoted language supports the holding that the operative complaint did not assert a qualifying loss under the CFAA, specifically, for attorneys' fees and emotional damages. *See Welter*, 2023 WL 2988627, at *11 (summation paragraph stating "Welter's legal fees and claimed emotional damages" did not constitute loss under the CFAA). Here, as noted previously, plaintiffs are not seeking attorneys' fees or emotional distress damages under the CFAA. Rather, they seek compensation for losses involving Therrien's unauthorized access to the Accounts. These include responding to the unauthorized intrusion, conducting damage assessments,

determining the extent of the intrusion, and reviewing the Audit Report to respond to the unauthorized access and ascertain the extent of the damage.  In short, *Welter* is distinguishable because it does not address the losses at issue here.

Lastly, Therrien relies on *Pearl Inv.,* 257 F. Supp. 2d at 349, and emphasizes that the plaintiff did not adduce evidence that defendants damaged the computer system in a *quantifying* amount.  In particular, he quotes the following as requiring a dismissal in this case:

> [W]hile Pearl adduces evidence that speed was important to the operation of its [computer systems], it *sets forth no cognizable evidence* that the Defendants' alleged conduct damaged its system *in any quantifiable amount*, let alone in an amount approximating more than $5,000 in one year.  This is fatal to its CFAA cause of action.

*Id*. (emphasis added).  *Pearl Investments* is distinguishable because the court used this passage to allow a summary judgment motion as opposed to a motion to dismiss.  *Id*.  To state the obvious, a summary judgment requires a more fulsome showing based on materials such as declarations, depositions, documents, or admissions.  Fed. R. Civ. P. 56(b)(1).  A motion to dismiss relies on the factual allegations in the complaint and certain narrow categories of documents outside the complaint.

Per the foregoing, as stated above, the amended complaint pleads a "loss" under the CFAA.  In addition, Therrien misreads the amended complaint as alleging that Calabrese, Vogel, and

plaintiffs' other managers expended their personal time to rectify the damage caused by Therrien.

## B.   <u>SPECULATIVE AND CONCLUSORY DAMAGES</u>

Next, Therrien contends that the alleged damages are speculative and conclusory and thereby fail to satisfy the pleading standards of Federal Rule of Civil of Procedure 8.  He takes issue with the purportedly deficient allegations that fail to explain how Therrien's unauthorized access allowed him to gain a business advantage over Vogel, to prolong the state court lawsuits, and to cause plaintiffs to spend countless hours responding to the hack. (D. 15, pp. 1-2, 7).  Plaintiffs counter that the purportedly deficient allegations do not concern damages, which is the foundation for Therrien's argument.

"Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 11 (1st Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Twombly* 550 U.S. at 555).  "A 'short and plain' statement needs only enough detail to provide a defendant with 'fair notice of what the claim is and the grounds upon which it rests.'" *Id*. at 12 (ellipses and citations omitted). "Specific facts are not necessary" to make this showing.  *Id*. (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007)).   In

17

evaluating the complaint, "conclusory allegations are not entitled to be assumed true" and "allegations that merely parrot the relevant legal standard are disregarded." *In re Ariad Pharm., Inc. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016) (quoting *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 43 (1st Cir. 2013), and *Iqbal*, 556 U.S. at 681) (internal quotation marks omitted).

Here, Therrien seeks specific facts that are not necessary to provide him fair notice of the CFAA claim and the grounds for the claim under Rule 8.  Anent the state court lawsuits, the amended complaint identifies the lawsuits.  Therrien also filed the complaints in the state court lawsuits which are part of the Rule 12(b)(6) record.[9]  Relative to plaintiffs spending countless hours responding to the intrusion, the amended complaint states, in a relatively fulsome manner, that Therrien's conduct "resulted in Plaintiffs being forced to spend countless hours responding to the intrusion, conducting damage assessments and then working to restore their data."  (D. 15, ¶ 55).  Further, it elucidates that "multiple managers for the [p]laintiffs spent in excess of 100

---

[9] The amended complaint identifies the state court lawsuits only by their citations.  Therrien, however, filed the complaints in those lawsuits.  He asserts that the court may take judicial notice and consider the state court complaints as official public records or documents sufficiently referred to in the amended complaint.  Plaintiffs do not address the argument and therefore waive any objection.  Given that, the court considers the complaints as part of the Rule 12(b)(6) record.  In any event, such consideration does not alter the decision to deny the motion to dismiss.

hours responding to this intrusion and conducting the necessary damage assessment." (D. 15, ¶ 55). In short, the amended complaint sets out facts that give Therrien fair notice of the CFAA claim and the grounds for the claim.

## C.  CONTRADICTORY ALLEGATIONS

As a final matter, Therrien seeks dismissal because the facts in the amended complaint contradict the facts in the original complaint regarding Therrien's authority to access Rockland's computer network. Therrien therefore submits that the allegation in the original complaint that Vogel granted him access to the Accounts should control. Plaintiffs point out that the amended complaint supersedes the complaint and the case relied on by Therrien to support his argument[10] is not controlling in the First Circuit. Therrien's argument is not well-grounded.

To begin, and by way of background, the purportedly contradictory facts involve Therrien's limited authorized access alleged in the original complaint versus his lack of any authorized access to the Accounts alleged in the amended complaint. Stated otherwise, the original complaint states that Therrien exceeded the access he was given whereas the amended complaint provides that Therrien had no authorized access at all. (D. 1, ¶ 53) (original complaint stating, "By exceeding the access he was

---

[10] *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ 0400(NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008).

permitted, . . ., Therrien accessed 'a computer without authorization' within the meaning of the CFAA.") (emphasis omitted); (D. 15, ¶ 18) (amended complaint stating, "Therrien is not authorized, nor has he ever been authorized, to access or view the Accounts.").[11]

As indicated, Therrien relies on *Colliton*, 2008 WL 4386764, at *6, in presenting his argument. As stated therein, "[w]here a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'" *Id*. (quoting *Wallace v. New York City Dep't of Corr.,* No. 95 Civ. 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)).

However, *Colliton*, an Eastern District of New York case, is not controlling precedent in the First Circuit. Indeed, there is little, if any, indication that the First Circuit adheres to *Colliton*. *See Krah v. Cnty. of Lincoln*, No. 2:16-cv-00415-JDL, 2017 WL 1232409, at *8 (D. Me. Apr. 2, 2017) (declining to follow *Colliton* because of "the absence of any indication that the First

---

[11] As an aside, the original complaint is not as contradictory as Therrien maintains. Indeed, the original complaint states facts that correspond to those in the amended complaint regarding the absence of any authorized access. (D. 1, ¶ 17) (original complaint stating, "Therrien is not authorized, nor has he ever been authorized, to access or view the Accounts maintained by any of the Plaintiffs at Rockland.").

Circuit would follow the *Colliton* line of cases"); *accord Omni Continuum LLC v. NKT Photonics Inc.*, Civil Action No. 1:24-cv-11007-IT, 2024 WL 5125130, at \*3 (D. Mass. Dec. 16, 2024) (Whether the *Colliton* "rule should apply in the First Circuit is debatable.") (citing *Krah*, 2017 WL 1232409).

In addition, the principle in *Colliton* is discretionary. As such, the court declines to follow it even assuming it were applicable. *See Omni*, 2024 WL 5125130, at \*3 ("[E]ven if the court" adhered to *Colliton*, "accepting the allegations in" the original complaint is discretionary and there is "no reason to exercise any such discretion here.")

Separately, the amended complaint supersedes the original complaint. "Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . ." *MSP Recovery Claims, Series LLC v. Fresenius Med. Care Holdings, Inc.*, 131 F.4th 51, 57 (1st Cir. 2025). This firmly-established rule applies and counsels against applying *Colliton*.

## V.   <u>CONCLUSION</u>

In accordance with the foregoing, the motion to dismiss (D. 19) is **<u>DENIED</u>**.

> /s/ Donald L. Cabell
> DONALD L. CABELL, U.S.M.J.

DATED:  June 11, 2026